# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [SEALED], <br><br> Plaintiff, <br><br> – Against – <br><br> [SEALED], <br><br> Defendants. | Civil Action No _____ <br><br> FALSE CLAIMS ACT COMPLAINT <br><br> [FILED UNDER SEAL] |

**FILED IN CAMERA AND UNDER SEAL UNDER**
**31 U.S.C. § 3730(b)(2)**
**DO NOT POST ON ECF**
**DO NOT PUT IN PRESS BOX**

Law Offices of Darth M. Newman LLC
1140 Thorn Run Rd, #601
Coraopolis, PA 15108
(412) 436-3443

*Counsel for Plaintiff Relator*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Zachary HOLTZMAN, | Civil Action No _____ |
| Plaintiff, | FALSE CLAIMS ACT COMPLAINT |
| v. | [FILED UNDER SEAL] |
| Dr. DAVID P. MAY; SHORE MEMORIAL HOSPITAL d/b/a SHORE MEDICAL CENTER, | |
| Defendant. | |

RECEIVED
JUL 10 2023
AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

*Qui tam* plaintiff and Relator Zachary Holtzman, through his undersigned attorney, hereby brings this action on behalf of the United States of America, against:

- Dr. David P. May; and
- Shore Memorial Hospital d/b/a Shore Medical Center ("SMC").

The claims asserted in this Complaint are based on Defendants submitting, or causing to be submitted, materially false applications for a Paycheck Protection Program ("PPP") loan and related forgiveness for a putative sole proprietorship employing a total of 246 persons. Defendants' applications included materially false statements or material omissions about the employee size of his sole proprietorship(s). In reality, no such business existed and certainly no business employing 246 people. Instead, Defendants combined and conspired to obtain a PPP loan and then forgiveness of that loan to which they were not entitled and did so by falsely representing the loan was being used

2

by Dr. May's sole proprietorship when in fact the loan proceeds were to be used by SMC, which did not qualify to receive them.

Defendants' PPP loan application was approved on or about April 29, 2020 in the amount of $2,777,510. This loan was forgiven in its entirety costing the government a total of $2,808,294 that would not otherwise have been paid but for the false claims described herein.

The claims are based on the facts and information set forth below.

## TABLE OF CONTENTS

**NATURE OF THE CLAIM** .................................................................................................................. 2

**PARTIES** ............................................................................................................................................... 2

    A. Relator – Zachary Holtzman ............................................................................................. 2

    B. Defendant Dr. David P. May ............................................................................................. 2

    A. Defendant Shore Memorial Hospital d/b/a Shore Medical Center ("SMC") ............................................................................................................................... 2

**JURISDICTION AND VENUE** .......................................................................................................... 3

**FACTS** .................................................................................................................................................... 4

    I. Governing Law ......................................................................................................................... 4

        A. The Federal False Claims Act ............................................................................................ 4

        B. The Paycheck Protection Program .................................................................................... 5

            i. Affiliation Rules ............................................................................................................ 7

    II. Violations of the False Claims Act .................................................................................... 9

        A. PPP Loan Application ........................................................................................................ 9

        B. SPG and SMC's Role(s) ................................................................................................... 10

**CAUSES OF ACTION** ..................................................................................................................... 12

## NATURE OF THE CLAIM

1. Relator sues Defendants to recover treble damages and civil penalties on behalf of the United States of America for Defendants' false applications for a PPP loan and forgiveness which were submitted to the Small Business Administration ("SBA") through Defendant's bank, U.S. Bank, NA.

2. Defendants knew they did not meet the established criteria set by the SBA to obtain the PPP loan or forgiveness funds.

3. Defendants engaged in the submission of false claims to the United States in violation of the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA").

## PARTIES

### A. Relator – Zachary Holtzman

4. Mr. Holtzman is an individual resident and domiciliary of the Commonwealth of Pennsylvania.

### B. Defendant Dr. David P. May

5. Upon information and belief, Defendant David P. May is an individual resident and domiciliary of the State of New Jersey with an address of 222 56th St, Sea Isle City, NJ 08243.

### A. Defendant Shore Memorial Hospital d/b/a Shore Medical Center ("SMC")

6. Defendant Shore Memorial Hospital d/b/a Shore Medical Center ("SMC") is a non-profit company registered in the State of New Jersey with a principal office location of 100 Medical Center Way, Somers Point, NJ 08244.

2

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345 because this action involves a federal question and the United States is plaintiff. This Court also has subject matter jurisdiction under 31 U.S.C. § 3732(a).

8. The Court may exercise personal jurisdiction over the Defendants under 31 U.S.C. § 3732(a). The Court has personal jurisdiction over Defendants because the transacted business in this district and the acts complained of occurred within this district.

9. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) & (c) because Defendants transact business in this District and a substantial part of the events establishing the alleged claims arose in this District.

10. No allegation in this Complaint is based on a public disclosure of allegations or transactions in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, administrative, or General Accountability Office, or other Government report, hearing, audit, or investigation; or from the news media. Rather, Relator is the original source.

11. Under 31 U.S.C. § 3730(b)(2), this Complaint was filed in camera and under seal and shall not be served on Defendant until the Court so orders.

12. Disclosure of substantially all material evidence and information possessed by Relator has or will be served on the government.

## **FACTS**

### I. **Governing Law**

#### A. **The Federal False Claims Act**

13. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or conspires to do so. 31 U.S.C. § 3729(a)(1).

14. As of the date of filing, any person found to have violated these provisions is liable for a civil penalty of not less than $13,508 and not more than $27,018 for each such violation, plus three times the damage sustained by the Government.

15. The FCA imposes liability where conduct is "in reckless disregard of the truth or falsity of the information" and clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

16. The FCA also broadly defines a "claim" to include "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that - ... is made to a contractor, grantee, or other recipient if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest ... " 31 U.S.C. § 3729(b)(2)(A).

17. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to sue on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any defendant. The complaint remains under seal while the Government conducts an investigation of the allegations and determines whether to intervene. 31 U.S.C. §3730(b).

**B.   The Paycheck Protection Program**

18. The Paycheck Protection Program ("PPP") is the United States Government business loan program established in 2020 through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to help certain businesses, self-employed workers, sole proprietors, certain nonprofit organizations, veterans' organizations, and tribal businesses to continue paying their workers. The program is implemented by the U.S. Small Business Administration ("SBA").

19. The PPP allowed qualified entities to apply for low-interest private loans to pay for their payroll and certain other operating costs. Under the PPP, the allowable amount of a PPP loan was calculated based on the borrowing entity's average monthly payroll costs multiplied by 2.5.[1]

20. The PPP loan had to be used to cover payroll costs, rent, interest, and utilities.

---

[1] *See* How to Calculate Maximum Loan Amounts – by Business Type, U.S. Small Business Administration, (Jun. 26, 2020) https://www.sba.gov/sites/default/files/2020-06/How-to-Calculate-Loan-Amounts-508_1.pdf (last visited September 7, 2022).

21. The loan may be partially or fully forgiven if the business keeps its employee counts and employee wages stable.

22. The deadline for entities to apply for a PPP loan was initially June 30, 2020, which was later extended to August 8, 2020.

23. The PPP was reopened on January 11, 2021. The Program ended on May 31, 2021.[2]

24. The PPP was added under Section 1102 of the CARES Act by amending Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) *et seq.*, which temporarily permitted the SBA to guarantee 100 percent of the PPP loans.

25. Section 1106 of the CARES Act, which also amended Section 7(a), further provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

26. As described below, Defendants did not qualify for any PPP loan or forgiveness because Dr. May did not have any sole proprietorship and certainly no sole proprietorship with 246 employees and SMC did not otherwise qualify for a PPP loan due to its enormous size.

---

[2] *See* Paycheck Protection Program, U.S. SMALL BUSINESS ADMINISTRATION, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program (last visited Dec. 9, 2021).

### i. *Affiliation Rules*

27.  The PPP loan program was designed and intended to benefit small businesses.

28.  For the purposes of first round PPP loans, the relevant statutes and regulations defined small businesses as those entities with 500 or fewer employees.

29.  SBA's existing affiliation rules apply to the PPP loan program's definition of small businesses. In other words, all employees of the entities under the same ownership or control "count" towards the 500-employee limit.

30.  13 C.F.R. 121.106 (a) sets out how the SBA calculates the number of employees, in pertinent part, as follows:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, parttime, or other basis. This includes employees obtained from a temporary employee agency, professional employer organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern.

31.  The SBA repeatedly clarified that the affiliation rules at 13 C.F.R. § 121.301(f) applied to PPP loans and that for the purposes of counting employees, all foreign and domestic affiliated employees **must** be counted. For example, the SBA's March 12, 2021, FAQs included question 44 on this topic:

> **44. Question:** How do SBA's affiliation rules at 13 C.F.R. 121.301(f) apply with regard to counting the employees of foreign and U.S. affiliates?
>
> **Answer:** For purposes of the PPP's 500 or fewer employee size standard (or 300 employee size standard for Second Draw PPP Loans and certain entities for First Draw PPP Loans), an applicant **must count all of its employees and the employees of its U.S and foreign affiliates**, absent a

7

> waiver of or an exception to the affiliation rules. 13 C.F.R. 121.301(f)(6). Business concerns seeking to qualify for a First Draw PPP Loan as a "small business concern" under section 3 of the Small Business Act (15 U.S.C. 632) on the basis of the employee-based size standard must do the same.

Exhibit 1, March 12, 2021 SBA FAQs (emphasis added).

32. The applicable affiliation rules appear at 13 C.F.R. § 121.301.

> Concerns and entities are affiliates of each other when one controls or has the power to control the other, **or a third party or parties controls or has the power to control both**. It does not matter whether control is exercised, so long as the power to control exists.

13 C.F.R. § 121.301(f) (emphasis added).

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity.

13 C.F.R. § 121.301(f)(1).

33. The affiliation rules presented a special problem for certain industries which typically organize themselves as several nominally individual businesses owned or controlled by a single entity.

34. To address this reality, Congress provided statutory carveouts for certain parts of the hospitality industry and some franchise businesses. *See* 15 U.S.C. § 636(A)(36)(D)(iv).

35. Importantly, no such carveout exists for conglomerated healthcare businesses.

36. The SBA often specifically warned potential borrowers that civil and criminal liability could attach to false applications. *See e.g.,* 85 Fed. Reg. 20811 at 20814 (April 15, 2020).

## II. **Violations of the False Claims Act**

37. Defendants violated the False Claims Act by submitting materially false applications and supporting materials in connection with the application for a PPP loan and then forgiveness of that loan.

### A. **PPP Loan Application**

38. Defendants' PPP loan application was approved on or about April 29, 2020 in the amount of $2,777,510.

39. This loan was forgiven on or about June 1, 2021 in its entirety costing the government a total of $2,808,294.

40. In his applications, Dr. May represented that he was operating a physician's office as a sole proprietorship in his own name and employing 246 people.

41. Upon information and belief, Dr. May does not operate a sole proprietorship physician's office and he does not employ 246 people through a sole proprietorship.

42. Instead, at the time, Dr. May worked as a general surgeon and administrator for SMC and as a physician leader at one of SMC's affiliated physician services entities: Shore Physicians Group ("SPG")[3].

43. Nevertheless, Dr. May received the above PPP loan in the total amount of $2,777,510 and then forgiveness in the total amount of $2,808,294.

### B. **SPG and SMC's Role(s)**

44. The loan and forgiveness obtained by Dr. May was booked by SMC and appears on that entity's audited financial reports in each of 2020, 2021, and 2022. *See* Exhibit 2 SMC 2021 and 2022 Audited Financials at 8 and 14; Exhibit 3, 2021 SMC Form 990 at 172 and 179; Exhibit 4, 2020 SMC Form 990 at 184.

45. At the time Dr. May applied for the PPP loan, SMC was not eligible for its own PPP loan because it is not a "small" business as defined by the SBA.

---

[3] SPG is one of several physician services entities affiliated with SMC that provide medical staff to SMC. SPG, and several other affiliated physician services entities, are included in SMC's consolidated financial statements. *See e.g.,* Exhibit 4, 2020 SMC Form 990 at 178. According to the audited financials:

> Shore Memorial Physicians Group, P.C. (the Physicians Group), a controlled affiliate of the Medical Center, is a for-profit professional corporation established for the purpose of developing an employed physician network. The Physicians Group is designed to achieve a more integrated approach to the delivery of medical care for the community served by the Medical Center.

*Id.*

46. To qualify as small, an entity must have fewer than 500 employees or fall under the size and revenue threshold for its applicable NAICS code.

47. SMC fails both tests.

48. SMC had more than double the permitted number of employees and revenues.

49. Nor could SPG have directly applied for and received a first round PPP loan.

50. As an avowed affiliate of SMC, SPG was required to "count" SMC's employees as its own for the purposes of PPP loan qualification. *See e.g.,* 13 C.F.R. 121.106 (a) (determining number of employees); 13 C.F.R. § 121.301 (affiliation rules); Exhibit 1, March 12, 2021 SBA FAQs at Question 44 (clarifying applicants "must count all of its employees and the employees of its U.S and foreign affiliates").

51. In other words, if SMC did not qualify, neither did its affiliates like SPG.

52. This reality helps explain why Dr. May applied for the loan, and then forgiveness, as if he was a sole proprietor and why the applications were not clearly submitted on behalf of SPG or SMC – neither entity qualified at the time.

## CAUSES OF ACTION

### COUNT I
### Violations of the False Claims Act: Presenting or Causing a False Claim
### (31 U.S.C. § 3729(a)(1)(A))

53.     The foregoing allegations are repeated and realleged as if fully set forth herein.

54.     The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), imposes liability upon those who knowingly present or cause to be presented false claims for payment or approval.

55.     Defendants knowingly and willfully violated the False Claims Act by presenting, or causing to be presented, false claims for payment or approval.

56.     Defendants knowingly and willfully violated the False Claims Act by presenting, or causing to be presented, false claims for payment or approval.

57.     Specifically, and as alleged in more detail above, Defendants presented, or caused to be presented, materially false applications for PPP loan funds and then for forgiveness of the resulting loans.

58.     Defendants certified compliance with applicable PPP laws, rules, and regulations despite not being compliant.

59.     Defendants similarly certified the existence of facts which were not true.

60.     Defendants knew or should have known (as defined in 31 U.S.C. § 3801(a)(5)) that the facts and certifications to which they attested were not true and that they made, presented, or submitted, or caused to be made, false or fraudulent claims for payment to the government.

61. Each of the applications submitted or caused to be submitted by Defendants is a separate false and fraudulent claim.

62. Defendants presented or caused to be presented these claims knowing their falsity, or in deliberate ignorance or reckless disregard that such claims were false.

63. The United States was unaware of the foregoing circumstances and conduct of the Defendants and, in reliance on said false and fraudulent claims, authorized payments to be made to or on behalf of the Defendants, made such payments, and has been damaged.

64. Because of these false or fraudulent claims submitted or caused to be submitted by Defendants, the United States has been damaged in an amount to be determined at trial.

## COUNT II
### Violations of the False Claims Act: Making, Using, or Causing to be Used a False Record or Statement
### (31 U.S.C. § 3729(a)(1)(B))

65. The foregoing allegations are repeated and realleged as if fully set forth herein.

66. The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), imposes liability upon those who knowingly make, use, or cause to be made or used, false records or statements material to a false or fraudulent claim.

67. Defendants knowingly and willfully violated the False Claims Act by making, using, or causing to be made or used, false records or statements material to false or fraudulent claims.

68. Specifically, for purposes of obtaining or aiding to obtain PPP loans and then forgiveness of those loans, Defendants made or presented, or caused to be made or presented, to the United States false or fraudulent applications and/or records, knowing these materials to be false or fraudulent, or acting with reckless disregard or deliberate ignorance thereof.

69. Each application submitted to the Government in support of Defendants' above-described false claims is a separate false record or statement and separate violation of 31 U.S.C. § 3729(a)(1)(B).

70. The United States was unaware of the foregoing circumstances and conduct of the Defendants and, in reliance on said false and fraudulent applications and/or records, authorized payments to be made to or on behalf of the Defendants, made such payments, and has been damaged.

71. Because of these false or fraudulent statements submitted or caused to be submitted by Defendants, the United States paid the claims, resulting in damages to the United States in an amount to be determined at trial.

## COUNT III
## Violations of the False Claims Act: Conspiring to Violate the False Claims Act
## (31 U.S.C. § 3729(a)(1)(C))
## (All Defendants)

72. The foregoing allegations are repeated and realleged as if fully set forth herein.

73. The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), imposes liability upon those who conspire to commit a violation of another sub-section of the False Claims Act.

74. Defendants knowingly, in reckless disregard, and/or in deliberate ignorance of the truth conspired between themselves, with their employees and administrators, and others, to violate the False Claims Act.

75. Defendants conspired to submit false and fraudulent claims related to their applications for PPP loan and forgiveness funds and the use of those funds.

76. Defendants did in fact submit false and fraudulent claims for PPP loan funds and forgiveness.

77. As a consequence of their conspiracies, the United States paid money in connection with the forgiveness of the PPP loan when it would not have but for Defendants' unlawful conduct.

78. As a result of this conspiracy, and the resulting false or fraudulent claims submitted or caused to be submitted by Defendants, the United States paid the claim(s), resulting in damages to the United States in an amount to be determined at trial.

## COUNT IV
### Violations of the False Claims Act: Failure to Repay
### (31 U.S.C. § 3729(a)(1)(G))

79. The foregoing allegations are repeated and realleged as if fully set forth herein.

80. The False Claims Act, 31 U.S.C. § 3729(a)(1)(G), imposes liability upon those who knowingly make, use, or cause to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

81. Upon receipt of improperly obtained PPP loan and forgiveness funds, Defendants had an obligation to repay and refund to the Government the amounts paid by the government.

82. Defendants knowingly and willfully violated the False Claims Act by failing to so repay or refund the monies he received.

83. The United States was unaware of the foregoing circumstances and conduct of Defendant.

84. Had the government been aware of Defendants' knowing false certifications and knowing failure to return overpayments it would have taken steps to recover them.

85. The United States has been damaged as a result in an amount to be determined at trial.

**WHEREFORE, Relator, on behalf of himself as well as the United States requests the following relief:**

    a. A judgment against Defendants, jointly and severally, in an amount equal to all damages due to the Government, including treble damages, under the FCA;

    b. A judgment against Defendants, jointly and severally, for all civil penalties due to the Government for each of Defendant's violations of the FCA;

    c. That Relator recover from Defendants, jointly and severally, all costs of this action, with interest, including the cost to the Government for its expenses related to this action;

    d. That Relator be awarded all reasonable attorneys' fees in bringing this action;

    e. That Relator be awarded the maximum amount of the proceeds of this action as allowed under 31 U.S.C. § 3730, and/or any other applicable provision of law;

    f. That a trial by jury be held on all issues so triable;

    g. An award of pre- and post-judgment interest; and

    h. Such other and further relief to Relator and/or the United States of America as this Court may deem just and proper.

## **REQUEST FOR TRIAL BY JURY**

Under Rule 38 of the Federal Rules of Civil Procedure, Relator hereby requests a trial by jury.

Dated: July 6, 2023      By: _____

                               Darth M. Newman
                               NJ Bar Number: 032282008
                               Law Offices of Darth M. Newman LLC
                               1140 Thorn Run Rd, # 601
                               Coraopolis, PA 15108
                               Telephone:   412-436-3443
                               Email:        darth@dnewmanlaw.com
                               *Attorney for Plaintiff Relator*